# In the United States Court of Federal Claims

No. 24-1687
Filed: April 7, 2025

| | |
|---|---|
| **ESTATE OF ROBERT F. ARMITAGE, DECEASED, ROBERT H. ARMITAGE AND ADAM M. GREEN, EXECUTORS,** | |
| *Plaintiff*, | |
| v. | |
| **THE UNITED STATES,** | |
| *Defendant*. | |

*Randall Paul Andreozzi*, Lippes Mathias LLP, Clarence, NY, for Plaintiff.

*Anthony Mark Cognasi*, Trial Attorney, *G. Robson Stewart*, Assistant Chief, *David I. Pincus*, Chief, Court of Federal Claims Section, *David A. Hubbert*, Deputy Assistant Attorney General, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

Robert F. Armitage ("Mr. Armitage") filed a Complaint against the United States for a tax refund.[1] (*See* Compl., ECF No. 1). Specifically, Mr. Armitage seeks to recover a 2017 federal tax refund predicated on his purported right to a foreign tax credit. (*See id.*). The United States moves to dismiss the Complaint, arguing that Mr. Armitage did not prepay his tax liability and adhere to the prerequisites for filing an administrative claim with the Internal Revenue Service ("IRS"). (*See* Def.'s Mot. to Dism., ECF No. 10). The Court agrees; Mr. Armitage's failure to pay the tax he seeks to have "refunded" divests this Court of jurisdiction.

As set forth below, the Court **GRANTS** the United States' Motion to Dismiss for lack of subject-matter jurisdiction. *See* RCFC 12(b)(1); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

---

[1] Mr. Armitage passed away since the filing of his Complaint. (ECF No. 9). "Estate of Robert F. Armitage, Deceased, Robert H. Armitage and Adam M. Green, Executors" was substituted as Plaintiff thereafter. (Dkt. 1/22/2025). For consistency, the Court refers to Mr. Armitage as the prosecuting party instead of his estate.

1

## I.  Background

On November 5, 2018, Mr. Armitage filed his 2017 Individual Income Tax Return (Form 1040), reporting an adjusted gross income of $69,841.00. (Def.'s Mot. to Dism., Ex. B at 6, ECF No. 10-1).[2] That form listed him as the sole owner of a Canadian corporation, Armbo Consultants, Inc. (*Id.* at 15–16).

Thirteen months later, Mr. Armitage filed an amended tax return for 2017 (Form 1040X). (*See* Def.'s Mot. to Dism., Ex. C). The amended tax return reported an additional gross income of $779,966.00, resulting in a $251,241.00 tax increase. (*See id.* at 67). The considerable jump in reported returns was attributed to a transition tax under 26 U.S.C. § 965 ("Section 965"). (*See id.* at 68). Section 965 is related to The Tax Cuts and Jobs Act of 2017, which the Supreme Court has described as:

> [An act that] altered the United States' approach to international corporate taxation. The primary goal was to encourage Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States instead of abroad . . . . [O]ne piece of that intricate and multi-faceted 2017 Act imposed a new, one-time pass-through tax on some American shareholders of American-controlled foreign corporations. That one-time tax addressed one of the problems that had arisen under the old system: For decades before the 2017 Act, American-controlled foreign corporations had earned and accumulated trillions of dollars in income abroad that went almost entirely untaxed by the United States. The foreign corporations themselves were not taxed on their income. And other than subpart F, which applies mostly to passive income, the undistributed income of those foreign corporations was not attributed to American shareholders for the shareholders to be taxed.
>
> As part of the complicated transition to a more territorial system, the 2017 Act imposed a one-time, backward-looking tax on that accumulated income . . . . [T]he MRT attributed the long-accumulated and undistributed income of American-controlled foreign corporations to American shareholders, and then taxed those American shareholders on their pro rata shares of that long-accumulated income[.]

*Moore v. United States*, 602 U.S. 572, 580–81 (2024) (citing 131 Stat. 2054); *see also Section 965 Transition Tax*, IRS, https://www.irs.gov/businesses/section-965-transition-tax (last updated Nov. 27, 2024).

---

[2] Instead of separately tabbed attachments, the United States attached eight exhibits to its Motion in a single document without consecutive pagination. (Def.'s Mot. to Dism., Exs. A–H, ECF No. 10-1). For ease of reference, the Court refers to the Exhibit's letter identification and, where applicable, the page number assigned by CM/ECF.

According to Mr. Armitage's amended return, the $251,241.00 increase in income tax under the transition tax was neutralized by an indirect foreign tax credit of equal amount under 26 U.S.C. § 960 ("Section 960"). (Def.'s Mot. to Dism., Ex. C at 79–80). On his return, Mr. Armitage elected to pay the net tax liability in installments pursuant to 26 U.S.C. § 965(h)(1) ("Section 965"). (*See id.* at 108). The amended return also included an additional $877.00 in net investment income tax under 26 U.S.C. § 1411. (*See id.* at 67, 88). With his amended return, Mr. Armitage remitted a $877.00 payment.[3] (*See* Def.'s Mot. to Dism., Ex. A at 2 (noting subsequent payment of $877.00)).

On August 24, 2020, the IRS began an appraisal of an additional tax of $252,118.00, the aggregate of the $251,241.00 transition tax and $877.00 net investment income tax. (*See* Def.'s Mot. to Dism., Ex. A). The IRS opened an examination in the same month to assess the additional tax.[4] (*See id.*). The IRS provided Mr. Armitage with Information Document Requests ("IDRs") twice the following year. (*See* Def.'s Mot. to Dism., Exs. D, E). The IDRs requested calculations and substantiating documents attesting to both his Section 965 transition tax and Section 960 indirect foreign tax credit and set forth a time and date for a telephone conference. (*See* Def.'s Mot. to Dism., Exs. D, E). The IRS furnished a *Report of Income Tax Examination Change* (Form 4549-A) on August 18, 2022, after Mr. Armitage failed to respond or provide additional information as requested. (*See* Def.'s Mot. to Dism., Ex. H). While the report did not grant income adjustments, it allowed $10,106.00 in foreign tax credits and noted a $0.00 balance due or for overpayment. (*See id.* at 155).

On October 18, 2022, the IRS officially denied Mr. Armitage's "refund" claim, thereby rejecting the Section 960 indirect foreign tax credits. (*See* Compl. Ex. 1, ECF No. 1-1). In its reason for disallowance, the IRS cited the election statement requirement under 26 U.S.C. § 962 ("Section 962"), which Mr. Armitage did not provide.[5] (*See id.* at 3). Further, the IRS stated, "[u]nder IRC 965(h), the election to pay the tax in installments needs to be elected by the due

---

[3] While a copy of this check does not appear in the record before the Court, it is undisputed that this $877.00 payment occurred. (*See* Pl.'s Resp. at 3 ("Plaintiff enclosed a check for that $877 with the return[.]"); Def.'s Mot. to Dism. at 6 (reference to "$877 payment remitted with plaintiff's amended return")).

[4] The parties disagree on the date the audit began. Mr. Armitage states the audit began on August 28, 2020, four days after assessing the additional tax. (Pl.'s Resp. at 2, ECF No. 11 (citing Pl.'s Resp. Ex. A, ECF No. 11-1)). The United States claims it began on August 6, 2020. (Def.'s Mot. to Dism. at 4). Despite this discrepancy, the dates of the audit and assessment are not relevant.

[5] United States shareholders must make Section 962 elections in the "manner as the Secretary shall prescribe by regulations[,]" including filing an election statement. These statements must identify, among other requirements, the name, address, and tax year of each relevant controlled foreign corporation and related entities in the ownership chain. 26 C.F.R. § 1.962-2(b)(1). They must also specify the income included in their gross income per controlled foreign corporation, their share of earnings and profits and related foreign taxes for each controlled foreign corporation, and the distributions received from each controlled foreign corporation. *See* 26 C.F.R. § 1.962-2(b)(1)–(4).

date of the return," which was extended to October 15, 2018.[6] (*Id.*). Since the amended return was filed on December 26, 2019, after the extended deadline, and provided no substantiations, the IRS denied his claim. (*See id.*).

Mr. Armitage filed this action on October 18, 2024, alleging his entitlement to a tax refund for the 2017 taxable year under 26 U.S.C. § 7422. (*See generally* Compl.). According to Mr. Armitage, the amended federal income tax return where he claimed a credit for $251,241.00, satisfied a claim with the Secretary under 26 U.S.C. § 7422(a). (*Id.* at 2).

## II. Analysis

The United States moves to dismiss Mr. Armitage's claim for lack of subject-matter jurisdiction under RCFC 12(b)(1). (*See generally* Def.'s Mot. to Dism.). Specifically, the United States argues Mr. Armitage neglected to prepay his assessed tax liability and follow the prerequisites outlined in § 7422(a) for duly filing an administrative claim with the IRS. (*See id.* at 5). Further, the United States asserts that this Court does not have jurisdiction over disputes regarding the Declaratory Judgment Act. (*See id.* at 7 (citing 28 U.S.C. § 2201)). Mr. Armitage argues that this tax assessment was not statutorily allowed. (*See* Pl.'s Resp. at 2, ECF No. 11). He also states that this claim should be treated as a "denial of a refund" claim even though he does not actually demand a refund. (*Id.*). The Court finds that Mr. Armitage has not shouldered his jurisdictional burden and that his case must be dismissed.

The burden of establishing subject-matter jurisdiction rests with the plaintiff, who must do so by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all uncontroverted factual allegations made by the non-movant and draws all inferences in the light most favorable to that party. *See Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). Pursuant to RCFC 12(b)(1) and 12(h)(3), the Court must dismiss claims that do not fall within its subject-matter jurisdiction.

This Court has subject matter jurisdiction over tax refund suits under the Tucker Act if certain prerequisites are met. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008). First, and most importantly here, a plaintiff must satisfy the full payment rule, which requires the principal tax deficiency to be paid in full. 26 U.S.C. § 6511(a) (imposing statute of limitations from when tax was *paid*); *see e.g., Diamond v. United States*, 603 F. App'x 947, 950 (Fed. Cir. 2015); *Shore v. United States*, 9 F.3d 1524, 1526–27 (Fed. Cir. 1993); *Flora v. United States*, 357 U.S. 63, 68 (1958). Second, the plaintiff must duly file a tax refund claim with the IRS.[7] *See* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the

---

[6] In his Complaint, Mr. Armitage asserts that he did not request the eight-year payment plan for Section 965(h). (*See* Compl. ¶ 16). Yet, Form 1040X shows he elected for payment installments by checking the requisite box. (*See* Def.'s Mot. to Dism., Ex. C at 108).

[7] The administrative filing requirement of section 7422(a) is jurisdictional; without satisfying it, a petitioner cannot bring a tax refund case to this Court. *Brown v. United States*, 22 F.4th 1008, 1011 (Fed. Cir. 2022). "Under *United States v. Dalm*, . . . [duly] filing is a jurisdictional

recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury.]"). Unless a plaintiff satisfies these prerequisites, the Court lacks jurisdiction to hear a tax refund claim. *See Clintwood Elkhorn Mining Co.*, 553 U.S. at 4; *see also Chicago Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed. Cir. 1994).[8]

This jurisdictional issue is straightforward—plaintiffs must pay the disputed tax in full for this Court to have jurisdiction over a Tucker Act tax claim. *See e.g.,* 26 U.S.C. § 6511(a); *Diamond*, 603 F. App'x at 950; *Shore*, 9 F.3d at 1526–27; *Flora*, 357 U.S. at 68; *United States v. Williams*, 514 U.S. 527, 533 (1995); *DiNatale v. United States*, 12 Cl. Ct. 72, 74 (1987). Mr. Armitage asserts that he "filed the instant suit, having paid all tax due *per his Amended Return*." (Pl.'s Resp. at 7 (emphasis added)). However, this payment was based on his own calculations. As the United States correctly argues, Mr. Armitage was required to pay the $252,118.00 tax assessment before challenging the assessment's validity. (*See* Def.'s Reply. at 2, ECF No. 12). Mr. Armitage's self-assessed tax liability in his amended return does not eclipse the IRS's official assessment. *See Actavis Lab'ys FL, Inc. v. United States*, ___ F.4th. __, No. 2023-1320, 2025 WL 876911, at *1 (Fed. Cir. Mar. 21, 2025) (exercising jurisdiction when plaintiff "paid its tax liabilities *as calculated by the IRS*" (emphasis added)). This is fatal to Mr. Armitage's claim.

The parties dispute the significance of the $0.00 balance reflected on the relevant tax documents. The United States maintains that this balance "indicates that the amount of total corrected tax . . . equals the amount of the tax as previously adjusted (*i.e.*, the additional tax assessed on August 24, 2020)." (Def.'s Mot. to Dism. at 4). Mr. Armitage, however, contends that the additional tax assessment was improper because it was based on an audit that was never properly initiated, thereby denying him the IRC's statutory deficiency procedures and circumventing the statute of limitations under 26 U.S.C. § 6501.[9] (*See* Pl.'s Resp. at 3).

Ultimately, whether the $0.00 balance reflects the actual tax assessment is immaterial to the Court's jurisdiction because Mr. Armitage's dispute is improper. Mr. Armitage's claims are not for money damages and there is no basis for awarding a refund for money that was never actually paid. *See Flander v. United States*, 737 Fed. Appx. 530, 532 (Fed. Cir. 2018) ("Debt cancellation does not constitute monetary damages[.]"); *Ackerman v. United States*, 643 F.Supp.2d 140, 146 (D.D.C. 2009) (common sense dictates that person cannot request "refund"

---

requirement, while the adequacy of that filing is a claims-processing requirement." *Duke v. United States*, 173 Fed. Cl. 630, 633 (2024) (citing 494 U.S. 596, 609–10 (1990); *Brown*, 22 F.4th at 1011; *Vensure HR, Inc. v. United States*, 119 F.4th 7, 12–16 (Fed. Cir. Oct. 4, 2024)).

[8] Further, to properly prosecute an action in this Court, the plaintiff must provide the amount, date, and place of each payment to be refunded, as well as a copy of the refund claim when filing suit. RCFC 9(m).

[9] Mr. Armitage states that this was an attempt by the IRS to "couch[] its determination in the audit as the disallowance of a 'refund claim' rather than a notice of deficiency *even though the amended tax return did not claim a refund*." (Pl.'s Resp. at 3). This denial, according to Mr. Armitage, was filed after Section 6501's statute of limitations. (*See id.*). This issue, however, goes to the merits of Mr. Armitage's claims, which cannot be addressed at this stage.

when entity to which they made request does not have their money). The only potential recovery would be for this Court to issue a declaratory judgment that the IRS improperly imposed a tax liability, which it cannot do. 28 U.S.C. § 2201; *see also Rice v. United States*, 31 Fed. Cl. 156, 164 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995). Due to Mr. Armitage's noncompliance with jurisdictional prerequisites, the Court lacks subject-matter jurisdiction under RCFC 12(b)(1). *See Skillo v. United States*, 68 Fed. Cl. 734, 740–41 (Fed. Cl. 2005) (a plaintiff must "fully pay the disputed tax[,] . . . submit a claim for a refund to the IRS, and *wait until the IRS either denies the claim or fails to respond to the claim within six months*" (emphasis added)).

### III.     Conclusion

For the stated reasons, the Court hereby **GRANTS** the United States' Motion to Dismiss, (ECF No. 10). The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge